434 A.2d 1197

**Thomas Carl JONES, a/k/a Thomas Carl Friday, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 1981.

Decided Sept. 24, 1981.

492

William B. Eagan, Willow Grove, for appellant.

Joseph A. Smyth, Dist. Atty., Ronald T. Williamson, Chief, Appeals Div., David M. McGlaughlin, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

KAUFFMAN, Justice.

This is an appeal from an order imposing judgment of sentence entered in the Court of Common Pleas of Montgomery County on January 12, 1979.[1] Appellant, Thomas Carl Jones (a/k/a Thomas Carl Friday), was convicted by a jury of first degree murder and theft of movable property. These charges arose out of the brutal slaying of appellant's aunt, Mrs. Eleanor Friday, of Norristown. Appellant's principal complaint is that he was denied his right to a speedy trial as guaranteed by Pa.R.Crim.P. 1100 and by the speedy trial provisions of the United States and Pennsylvania Constitutions.[2] We disagree and affirm the judgment of sentence.

The relevant history of the case is as follows: Criminal Complaints were filed in Montgomery County on April 4 and 5, 1975, charging appellant with criminal homicide and various lesser offenses. On April 6, 1975, appellant was arrested in the State of Missouri by an officer of the Missouri State Police, and was returned to Montgomery County and charged with murder. Preliminary hearing was held on

1. This court is vested with jurisdiction pursuant to the Judicial Code, act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 722.

2. We have reviewed the following additional issues raised by appellant and find them to be without merit: whether the trial court erred (1) in failing to suppress the written and verbal statements made by appellant to the police; (2) in failing to suppress a gun holster seized by the police; (3) in failing to suppress testimony relating to a hair sample taken from appellant; (4) in failing to declare a mistrial when a police officer referred to an earlier suppression hearing in his testimony; and (5) in permitting the testimony of a Missouri trooper concerning his observations of appellant in Missouri shortly after the crime.

June 12, 1975, and appellant was indicted by the Grand Jury of Montgomery County on August 11, 1975.

A pre-trial Motion to Suppress Statements and Evidence was heard by the trial court, and on November 6, 1975, the motion was granted in part and denied in part. Certain statements made to and certain evidence seized by the arresting officer in Missouri, including the murder weapon, were ordered suppressed. On November 13, 1975, the ruling of the suppression court was appealed by the Commonwealth to this Court. By an Order and Opinion filed October 7, 1977, we affirmed. *Commonwealth v. Jones*, 474 Pa. 364, 378 A.2d 835 (1977). On January 4, 1978, the Commonwealth filed a Petition for Writ of Certiorari in the United States Supreme Court, and the Petition was denied on March 27, 1978. 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546.

On April 27, 1978, appellant filed a Motion to Dismiss under Pa.R.Crim.P. 1100, which was denied on May 2, 1978, and trial immediately commenced. On May 9, 1978, the jury returned its verdict. Post verdict motions were filed, argued and denied, and on January 12, 1979, appellant was sentenced to a term of imprisonment for life.

Appellant here contends that his right to a speedy trial guaranteed by Rule 1100 of the Pennsylvania Rules of Criminal Procedure [3] and by the federal and state constitutions was violated by the delay caused by the Common-

3. Rule 1100 provides in relevant part:
   \* \* \* \*
   (a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.
   (b) For the purpose of this Rule, trial shall be deemed to commence *on the date the trial judge calls the case to trial.*
   (c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.... Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth....
   Pa.R.Crim.P., Rule 1100(a)(2), (b) & (c). (Emphasis supplied).

wealth's appeals of defendant's successful suppression motion.[4]

## I

Appellant contends that after taking into account properly granted continuances and extensions of time obtained by both the prosecution and the defense, Rule 1100 required that his trial commence no later than December 1, 1975.[5] He argues: (1) that trial did not begin until after completion of the Commonwealth's unsuccessful appeals of the suppression order, (2) that the Commonwealth failed to petition the court for an extension of time for trial during the pendency of those appeals, and therefore (3) that Rule 1100 was violated.

The Commonwealth argues: (1) that all time after November 5, 1975, the date of the suppression hearing, is excludable from the Rule 1100 period because the trial had officially commenced on that date, and (2) that its appeals from appellant's suppression motion divested the trial court of jurisdiction to proceed, thus rendering a petition for extension of time unnecessary.

In determining when a trial "commences" for Rule 1100 purposes, this Court has been guided by the comment drafted by the Criminal Procedural Rules Committee:

It is not intended that preliminary calendar calls should constitute commencement of a trial. A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire, or to opening argument, *or to the hearing of any motions which had been reserved for the time of trial,* or to the taking of testimony or to some other such *first step* in the trial.

4. The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The Pennsylvania Constitution provides in part: "In all prosecutions the accused hath a right to ... a speedy public trial." Pa.Const. art. I, § 9.

5. The defense applied for and received a two-week continuance on September 4, 1975; on September 26, 1975, the Commonwealth, pursuant to Rule 1100(a)(2)(c), sought and obtained an extension of time until December 1, 1975.

Pa.R.Crim.P., Rule 1100 comment. (Emphasis supplied). In an often cited concurring opinion in *Commonwealth v. Lamonna*, 473 Pa. 248, 373 A.2d 1355 (1977), former Chief Justice Eagen discussed the meaning of this comment:

> The words 'some other such' immediately preceding 'first step in the trial' clearly indicate that the events specifically referred to in the comment are to be considered first steps in a trial for the purposes of Rule 1100, see *Commonwealth v. Boyle* [470] Pa. [343] 353, 368 A.2d 661, 666 (1977), even though not all of these events are, strictly speaking, directly involved with the determination of guilt or innocence. For example, if a case were called to trial and after determining the parties were present, the trial Judge held a *hearing on a Suppression Motion which had been reserved for the time of trial*, presumably the trial would have commenced for purposes of Rule 1100. This leads to the conclusion that the principle concern behind Rule 1100 is simply that the commencement of trial be marked by a substantive, rather than a pro forma, event. Moreover, each of the events specifically referred to in the foregoing portions of the comment represents a degree of commitment of the Court's time and resources such that the process of determining the defendant's guilt or innocence follows directly therefrom. Accordingly, *the beginning of any stage which leads directly into the guilt determining process is a 'first step' in the trial for the purposes of Rule 1100.*

473 Pa. at 260, 373 A.2d at 1361 (Eagen, C. J., concurring).

We conclude that trial in the present case commenced on November 5, 1975 with the hearing of appellant's Motion to Suppress since that Motion expressly was made "returnable at the time of trial before the trial judge" and since the trial court thus took a substantial "first step" leading directly into the guilt determining process. The trial judge's opinion noted:

> On the day listed for trial (Nov. 5, 1975) these motions were heard and decided. . . . *On that date the prosecution was prepared to proceed to trial and would have done*

*so but for the suppression of the murder weapon.* The Commonwealth's witnesses had been subpoenaed and waited all day at the court house. A court room had been assigned for the trial. The jury room was alerted to have a number of jurors committed to this case. *These facts reflect that the time and resources of the trial court and the prosecution were committed in a substantive, rather than a pro forma, manner to the commencement of trial. . . .* Therefore, for Rule 1100 purposes, trial commenced on November 5, 1975. (Slip Op. p. 15) (Emphasis supplied.)

■ The procession from the "first step," which flowed directly from appellant's own motion, to the guilt determining process was interrupted only by the appellate review of suppression issues important to the determination of guilt or innocence. There is no evidence that the appellate process was abused by the Commonwealth for the purpose of delay, and therefore, to the extent that Rule 1100 was designed to prevent unnecessary prosecutorial delay, the imposition of its drastic sanction here would serve no valid purpose.[6] That the delay lasted two and one-half years was hardly the prosecution's fault, but was simply an unfortunate consequence of backlogs in the judicial system. The Commonwealth had abided scrupulously by Rule 1100, and had properly presumed that the commencement of trial within 180 days foreclosed later collateral attack on appellant's conviction on Rule 1100 grounds.

■ The prosecution's additional argument that the appeals from the Suppression Order deprived the trial court of jurisdiction to proceed in the matter follows logically. The trial court had no control whatsoever over the appellate

6. The Commonwealth would have been derelict in its duty had it not appealed the suppression motion, for it had been handicapped by the loss of the murder weapon as evidence. Moreover, in ruling on the trial judge's decision on the Motion, this Court recognized that the Commonwealth's appeal was not frivolous. In *Commonwealth v. Jones, supra,* 474 Pa. at 373, 378 A.2d at 840 we noted, ". . . The situation presents a close question." See also *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), *cert. den.,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1964).

process. In both the court's and the Commonwealth's view, the trial was automatically stayed pending disposition of the appeals. This result is in fact mandated by Rule 1701(a) of the Pennsylvania Rules of Appellate Procedure:

Rule 1701. Effect of Appeal Generally

(a) General Rule. Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the *lower court or other government unit may no longer proceed further in the matter.*

Pa.R.A.P., Rule 1701(a). (Emphasis supplied).[7] Thus, even if we were to agree with appellant's contention that the trial had not "commenced" for purposes of Rule 1100, the timely appellate procedures taken by the Commonwealth clearly divested the trial court of authority to proceed, and thus acted as an automatic supersedeas of the operation of Rule 1100.

Our decision in *Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872 (1976), in no way conflicts with the conclusion we here reach. In *O'Shea*, after we had reversed the defendant's conviction, the Commonwealth sought and obtained a postponement of retrial because it was unable to prepare its petition for certiorari to the United States Supreme Court within the time period prescribed by Rule 1100 for commencement of retrial. The trial court granted the postponement with the proviso that retrial should commence within 30 days after denial of the petition. The defendant sought and obtained a discharge when, 62 days after the petition was denied, retrial had not begun.

Our opinion in *O'Shea*, however, said nothing about whether the appellate process itself, followed in a timely manner, would operate as an automatic supersedeas of the

7. Although Pa.R.A.P. 1701(a) did not become effective until approximately seven months after the suppression hearing in this case, the Official Comment to Rule 1701 notes:

Subdivision (a) codifies a well-established principle. See e. g. *Merrick Estate*, 432 Pa. 450, 247 A.2d 786 (1968); *Corace v. Balint*, 418 Pa. 262, 210 A.2d 882 (1965).

Rule. In *O'Shea*, all appeals had been concluded and jurisdiction had been returned to the trial court. The necessity of requesting an extension in the event of a timely appeal was not at issue and was not decided.

Aside from preventing unnecessary prosecutorial delay, Rule 1100 serves the valid and important purpose of ensuring that an accused, often incarcerated, is not for *any* reason made to wait indefinitely for commencement of his trial. It would be senseless, however, for us to release criminal defendants without trial, or worse, after conviction, unless the Commonwealth's *explicit* duty under the Rule clearly has been violated. Even if we were to assume *arguendo* that timely commencement of the appellate procedures did not divest the trial court of jurisdiction to proceed, there is no question that the Commonwealth, had it decided to cover all possible bets by making *pro forma* requests for extension, would have obtained those extensions despite the obvious delays incurred in the process. Discharging this defendant, a convicted first degree murderer, for the Commonwealth's failure to observe at most a technical requirement which had never been clearly articulated by this Court would do nothing to protect the rights of criminal defendants and would totally disregard the rights of society.

Accordingly, we reject appellant's contention that he has been denied a speedy trial as guaranteed by Rule 1100.

II

Appellant next contends that his federal and state constitutional rights to a speedy trial have been violated. Again, we disagree.

Although Rule 1100 was designed to implement the constitutional rights of an accused to a speedy trial, see *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972); Pa.R.Crim.P., Rule 1100 comment, the constitutional guarantees continue to provide a separate basis for asserting a claim of undue delay in appropriate cases. In analyzing claimed violations of constitutional speedy trial rights, we

first must determine whether the delay itself was sufficiently long to trigger further inquiry. If so, the court must then balance the length of delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any prejudice allegedly resulting from the delay. *Commonwealth v. Reinhart*, 466 Pa. 591, 353 A.2d 848 (1976); *cert. denied*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1977). *See also Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Myers*, 472 Pa. 200, 371 A.2d 1279 (1977); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972).

Appellant here was incarcerated for over three years pending trial, a period obviously long enough to require further inquiry. He claims that the delay caused him to lose the testimony of two principal witnesses: his landlady, who died in November 1977, and his wife, who divorced him in 1977 and left the jurisdiction. He further contends that his remaining witnesses, his mother and sister, have difficulty in recalling the critical details of the event because of the lengthy lapse of time.

The trial court expressly considered these claims of prejudice, however, and found them to be without foundation in fact:

We find these allegations to lack foundation. The transcript of the notes of testimony of the May 2, 1978, hearing on this issue reveals that (1) the defendant offered no testimony whatsoever regarding his mother and sister's possible testimony, (2) that the landlady's testimony would only have established that she saw the defendant two or three hours before the time the murder was alleged to have occurred, and (3) that the defendant knew the whereabouts of Mrs. Jones (Appellant's wife) and in fact interviewed and subpoenaed her in the weeks prior to trial. Therefore, upon these facts, we find that no prejudice inured to the defendant as a result of the delay.

Moreover, against this at best dubious claim of prejudice, we must weigh the reason for the delay. The Commonwealth was entitled, if not required by the interests of society, to

seek appellate review of what it considered to be the improper suppression of important evidence in a first degree murder trial. In *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), *cert. den.*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1964), this Court expressly recognized the Commonwealth's right to take such an appeal and society's interest in the outcome:

From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is handicapped because it cannot present *all* its available evidence. In the first situation, the element of finality inherent in the order of suppression is apparent and sufficient to render the order appealable. In the second situation, although the element of finality in the order is not so apparent, it is nevertheless present. Without a right of appeal in the Commonwealth in the second situation, the Commonwealth is completely deprived of *any opportunity* to secure an appellate evaluation of the validity of the order of suppression which forces the Commonwealth to trial without *all* of its evidence. The evidence suppressed may well mark the difference between success and failure in the prosecution; to deny the Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interest of society which it represents. In our zeal to protect and preserve for the accused every constitutional right to which he is entitled, we too often forget and neglect to preserve the rights of society which too are entitled to consideration. An appellate review of the validity of the order of suppression cannot harm the defendant whereas the denial of the right to such review does harm the Commonwealth. In *both* factual situations, the practical effects of an order granting the suppression of evidence give to the order such an attribute of finality

as to justify the grant of the right of appeal to the Commonwealth in both situations.

We agree with the sound reasoning of the trial court here that the delay in bringing appellant to trial caused solely by appellate review sought in good faith was unavoidable and proper:

As stated *supra*, the Commonwealth's appeal was a proper one given the significance of the suppressed evidence. The legitimacy and good faith character of the Commonwealth's appeal are evident by the "closeness of" the question raised. *Commonwealth v. Jones*, 474 Pa. 364, 378 A.2d 835 at 840 (1978). Additionally, prosecution of the appeal appears to have been effected with due diligence by the Commonwealth. These facts, combined with the speed with which trial commenced after the United States Supreme Court's denial of certiorari, lead this court to conclude that the reason for delay was proper. Slip op. at 17.

The judgment of sentence is affirmed.

O'BRIEN, C. J., filed a dissenting opinion in which ROBERTS, J., joins.

O'BRIEN, Chief Justice, dissenting.

Because of the majority's cavalier disregard of Pa.R. Crim.P. 1100 and our case law interpreting the Rule, I emphatically dissent.

The majority first holds that trial commenced as of November 5, 1975 suppression hearing. As the comment to Pa.R.Crim.P. 1100 states:

"It is not intended that preliminary calendar calls should constitute commencement of trial. A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire, or to opening argument, or to the hearing of any motions which had been reserved for the time of trial, or to the taking of testimony or to some other such first step in the trial."

As Former Chief Justice Eagen, in discussing the comment to Rule 1100, stated:

"... The principle concern behind Rule 1100 is simply that the commencement of trial be marked by a substantive, rather than a pro forma, event. Moreover, each of the events specifically referred to in the foregoing portions of the comment represents a degree of commitment of the Court's time and resources such that the process of determining the defendant's guilt or innocence flows directly therefrom. Accordingly, the beginning of any stage which leads directly into the guilt determining process is a 'first step' in the trial for purposes of Rule 1100." *Commonwealth v. Lamonna*, 473 Pa. 248, 260, 373 A.2d 1355, 1361 (1977) (Concurring Opinion).

The majority's holding that a suppression motion constituted a first step in a trial which then did not see the second step in the guilt determining process for over two years has no foundation in either logic or case law. See *Commonwealth v. Griffin*, 257 Pa.Super. 153, 390 A.2d 758 (1978) (suppression hearing did not constitute commencement of trial when sixty-two days elapsed before beginning of the actual guilt determining process); *Commonwealth v. Bowers*, 250 Pa.Super. 77, 378 A.2d 461 (1977) (forty-seven day delay). Furthermore, the majority implicitly holds that from the time of the suppression hearing, the Commonwealth was ready, willing and able to proceed to trial. In *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), we held the Commonwealth could appeal from a pre-trial order suppressing evidence *only if* the effect of the order was to terminate prosecution or the order would substantially handicap the Commonwealth because of its inability to present all of its evidence. In order to take its pretrial appeal from the November 13, 1975 order suppressing various evidence, the Commonwealth would have had to make an allegation which would directly contradict the majority's implicit holding that the Commonwealth was at all times ready to proceed to the actual guilt determining process. I fail to comprehend how the suppression motion could constitute commencement of trial for Rule 1100 purposes.

The majority next holds that the Commonwealth was not required to request an extension of time pursuant to Rule 1100(c), which states:

"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

In so holding, the majority blithely ignores section (d) of the rule, which states:

"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

"(1) the unavailability of the defendant or his attorney;

"(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded;"

Pa.R.Crim.P. 1100(d).

In *Commonwealth v. Brocklehurst*, 491 Pa. 151, 153, 420 A.2d 385, 387 (1980), Mr. Justice Kauffman, speaking for the majority, stated:

"This Court consistently has held that the Rules of Criminal Procedure must be *interpreted as written.*" (footnote omitted) (emphasis in original).

A literal reading of Rule 1100(d) makes clear that automatic exclusion for Rule 1100 is warranted only in two situations, neither of which is applicable instantly. When the Commonwealth is unable to commence trial *for any reason* despite its due diligence, Rule 1100(c) literally requires the Commonwealth to seek an extension of time.

*Commonwealth v. O'Shea*, 465 Pa. 491, 350 A.2d 872 (1976). Yet, the majority classifies the necessity of requesting an 1100(c) extension as "at most, a technical requirement." This assertion, however, presupposes that every request for a Rule 1100(c) extension where the Commonwealth wishes to exercise its appeal rights will automatically be granted. I do not believe that to be the case.

In the instant case, the Commonwealth obviously took its appeal in good faith and if an extension had been requested, it should have been granted. Situations could arise, however, where the Commonwealth could, in bad faith, attempt to exercise its appeal rights for the sole purpose of keeping the defendant incarcerated, knowing full well that it will be unable to obtain a conviction should the matter proceed to trial. In such cases, it would be incumbent upon the court entertaining the motion to extend time to determine if the appeal is being taken in good faith. Were it otherwise, an appellate court would then be charged with responsibility of making certain factual findings, a function we have always held to be within the domain of the trial court. *Commonwealth v. Smith*, 464 Pa. 314, 346 A.2d 757 (1975).

The majority further holds that the Commonwealth was not required to request an 1100(c) extension, since the Commonwealth, by taking its appeal, deprived the trial court of jurisdiction. Pa.R.A.P. 1701(a), cited by the majority, states:

> "Except as otherwise prescribed by these rules, after an appeal is taken . . ., the lower court . . . may no longer proceed further in the matter."

The majority thus assumes that the trial court would have lacked the power to act on a petition to extend time.

I believe the majority's reliance on Rule 1701(a) is misplaced for two reasons. First, the Rules of Appellate Procedure did not go into effect until July 1, 1976, some seven months after the suppression hearing in the instant case. Secondly, the Commonwealth's appeal cannot work to *wholly* deprive the trial court of jurisdiction. To the contrary, the trial court is obliged under 1100(c) to enter any and all

orders appropriate to maintain and protect a defendant's rights to a prompt trial. Thus, by entertaining a motion to extend time after an appeal has been taken, the trial court would be doing no more than maintaining the status quo until after the appeal has been decided.

Literal reading of Rule 1100 clearly obligates the Commonwealth to seek an extension of time whenever it cannot, despite all due diligence, try a defendant within the time period mandated by the rule. *Commonwealth v. O'Shea, supra.* The only time such an extension need not be sought is when time is excludable under section (d). The Commonwealth does not assert that either of the excludable periods is applicable and for good reason, as neither would apply instantly.

Criminal complaints were issued against appellant on April 4 and 5, 1975. He was arrested on April 6, 1975. Trial, however, did not commence until May 2, 1978. As none of that time is excludable under Pa.R.Crim.P. 1100(d) and no order extending time was issued pursuant to Pa.R. Crim.P. 1100(c), I would order appellant discharged because he was not tried within the time period mandated by Rule 1100.

ROBERTS, J., joins in this opinion.