504 A.2d 869

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jeanette Bobi BOND, Appellant.**

Superior Court of Pennsylvania.

Argued April 24, 1985.

Filed Jan. 31, 1986.

Norman A. Oshtry, Philadelphia, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Com., appellee.

Before SPAETH, President Judge, and CAVANAUGH, BROSKY, ROWLEY, WIEAND, McEWEN, DEL SOLE, BECK and TAMILIA, JJ.

CAVANAUGH, Judge:

Jeanette Bobi Bond was convicted of violating the Pennsylvania obscenity law, 18 Pa.C.S.A. § 5903. She now appeals to this court raising the following questions:

1. Did the trial of the appellant commence more than 180 days from the date the Complaint was filed against the appellant in violation of Pennsylvania Rule of Criminal Procedure No. 1100?

2. Is 18 Pa.C.S.A. § 5903, which prohibits the sale of obscene material unconstitutionally vague and overbroad in that it defines obscene material to include protected speech?

3. Was the Complaint issued without probable cause and without specificity in its charge sufficient to afford appellant proper notice of the charge and an opportunity to prepare a defense, all in violation of appellant's constitutional rights?

4. Can the material, in the first instance, as a matter of law be classified as hardcore sexual conduct and, therefore, be deemed legally obscene?

5. Did the Trial Court err when within the context of the definition of obscenity, the Court informed the Jury that material may be deemed to be "patently offensive" and not constitute an affront to contemporary community standards?

For the reasons which follow, we affirm the judgment of sentence.

*Rule 1100*

The Complaint against appellant was filed on February 11, 1981 charging her with a violation of the Pennsylvania obscenity law, 18 Pa.C.S.A. § 5903 (Purdon 1983). Therefore, pursuant to Rule 1100, appellant was required to be brought to trial before August 11, 1981. On July 22, 1981 (day 161), appellant, along with eight other defendants, appeared before the trial court for the purpose of litigating pre-trial motions. Included among those issues raised was appellant's Motion to discharge the appellant on the

grounds, *inter alia,* that the obscenity statute is unconstitutional. The motion stated six separate claims of unconstitutionality. The trial court reserved judgment on this motion pending the filing of briefs by the parties and the appellant agreed to waive the computation of time under Rule 1100 for thirty-seven days (until August 29, 1981) so that briefs could be filed. The request for time to file briefs was made by appellant's counsel. Appellant's new run date was accordingly extended until September 17.

On September 30, 1981, the Commonwealth filed a petition to extend the run date pursuant to Rule 1100(c). A hearing on the petition was scheduled for October 30.

On October 16, the trial court entered its order denying appellant's Motion to Dismiss. Subsequently on November 18, upon appellant's motion, the trial court certified for interlocutory appellate review the question of the constitutionality of the obscenity statute. Again appellant waived Rule 1100 for the period from November 9 to December 7, 1981.

On February 10, 1982, the Superior Court denied appellant's petition for interlocutory appeal. Trial was set for April 19, 1982, but was continued at the request of appellant's attorney.[1] The case was ultimately called for trial on June 7, 1982.

Pennsylvania Rule of Criminal Procedure 1100 directs that trial "shall commence no later than one hundred eighty (180) days from the day on which the complaint is filed." In denying appellant's Rule 1100 challenge, the trial court opined that trial commenced on July 22, 1981, the date on which appellant's pre-trial motions were litigated. Because this date fell within the 180-day period, the court found no violation of appellant's right to a speedy trial. We agree with that conclusion.

---

1. We ultimately decide herein that the trial "commenced" for Rule 1100 purposes on July 22, 1981. We need not decide what speedy trial rights existed thereafter since it is clear that scheduling the case sixty-eight days after the appellate court order which returned the case for trial was in no event unreasonable. *See Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981).

Rule 1100 expressly provides: "For the purpose of this Rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea a guilty or *nolo contendere.*" Pa.R.Crim.P. 1100(b). The comments to the Rule, however, explain further:

It is not intended that preliminary calendar calls should constitute commencement of a trial. For the purpose of this rule, a trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire or to opening argument, or to the hearing of any motions which had been reserved for the time of trial, or to the taking of testimony, or to some other such first step in the trial.

Pa.R.Crim.P. 1100 comments, *quoted with approval in Jones v. Commonwealth,* 495 Pa. 490, 495, 434 A.2d 1197, 1199 (1981). In an often relied upon Concurring Opinion, then Chief Justice Eagan embellished on this comment:

The words "some other such" immediately preceding "first step in the trial" clearly indicate that the events specifically referred to in the comment are to be considered first steps in a trial for purposes of Rule 1100, see *Commonwealth v. Boyle,* 470 Pa. 343, 353, 368 A.2d 661, 666 (1977), even though not all of these events are, strictly speaking, directly involved with the determination of guilt or innocence. For example, if a case were called to trial and, after determining the parties were present, the trial judge held a hearing on a suppression motion which had been reserved for the time of trial, presumably the trial would have commenced for purposes of Rule 1100. This leads to the conclusion that the principal concern behind Rule 1100 is simply that the commencement of trial be marked by a substantive, rather than pro forma, event. Moreover, each of the events specifically referred to in the foregoing portion of the comment represents a degree of commitment of the court's time and resources such that the process of determining the defendant's guilt or innocence follows directly therefrom. Accordingly, the beginning of any stage which leads

directly into the guilt-determining process is a "first step in the trial" for purposes of Rule 1100.

*Commonwealth v. Lamonna*, 473 Pa. 248, 260, 373 A.2d 1355, 1361 (1977) (Eagen, C.J. concurring). *See also Commonwealth v. Williams*, 250 Pa.Super. 221, 378 A.2d 906 (1977) (trial commences with a "substantial commitment of time and resources of the lower court toward a prompt determination of appellant's guilt or innocence").

In applying Rule 1100 under this interpretation, our courts on numerous occasions have considered whether a pretrial suppression hearing constitutes commencement of trial. For example, in *Commonwealth v. Dozier*, 258 Pa. Super. 367, 392 A.2d 837 (1978), the defendant claimed that his trial counsel was ineffective for failing to assert that Dozier's Rule 1100 rights had been violated. The criminal complaint had been filed against the defendant on December 28, 1974. Trial under Rule 1100 therefore had to commence by June 26, 1975. On March 12, 1975, Dozier appeared before the trial court for the purpose of entering a guilty plea. Following the colloquy, however, he decided not to plead guilty. The court then directed the parties to proceed on the defendant's oral motion to suppress evidence. The case was ultimately called to trial on July 21, 1975, 205 days after the filing of the complaint.

On appeal the Commonwealth argued that Rule 1100 was not violated because trial had "commenced" on March 12, the date of the defendant's suppression hearing. This court rejected that argument, ruling that "a hearing on a motion will mark the commencement of trial under Rule 1100 only if (1) the accused is adequately warned that the hearing has been reserved until the time of trial and (2) the hearing actually leads directly into the guilt-determining process." *Id.*, 258 Pa.Superior Ct. at 371–72, 392 A.2d at 840. On the facts before it, the *Dozier* court observed that the suppression hearing had not been explicitly reserved to trial and that the hearing did not lead directly into the guilt-determining process, but rather preceded the selection

of the jury by 101 days. Dozier, accordingly, was discharged.

Similarly, in *Commonwealth v. Machi*, 294 Pa.Super. 338, 439 A.2d 1230 (1982), the court was constrained to discharge the defendant because of the delay between the suppression hearing and the actual trial. The *Machi* court noted the philosophy that "a suppression hearing will be found to have lead directly into the guilt-determining process only if it triggered a substantial commitment of the court's time and resources to a determination of the defendant's guilt." *Id.*, 294 Pa.Superior Ct. at 342, 439 A.2d at 1232 (citing *Commonwealth v. Bethel*, 261 Pa.Super. 231, 396 A.2d 372 (1978) ). *Accord Commonwealth v. Griffin*, 257 Pa.Super. 153, 390 A.2d 758 (1978); *Commonwealth v. Williams*, 250 Pa.Super. 221, 378 A.2d 906 (1977).

Thus, when the Commonwealth has taken the position that the suppression hearing constituted the commencement of trial for Rule 1100 purposes, our courts have focused their inquiry on the temporal proximity of the hearing to the actual trial. *Compare Commonwealth v. Machi, supra* (185 days between hearing and trial); *Commonwealth v. Taylor*, 254 Pa.Super. 211, 385 A.2d 984 (1978) (173 days); *Commonwealth v. Haddad*, 256 Pa.Super. 176, 389 A.2d 658 (1978) (250 days); *Commonwealth v. Griffin*, 257 Pa. Super. 153, 390 A.2d 758 (1978) (62 days); *Commonwealth v. Bethel*, 261 Pa.Super. 231, 396 A.2d 372 (1978) (16 days) (all finding that the suppression hearing did not lead directly into the guilt-determining process) *with Commonwealth v. Kluska*, 484 Pa. 508, 399 A.2d 681 (1979), *cert. denied*, 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78 (1979). (one day between hearing and jury selection); *Commonwealth v. Whitner*, 278 Pa.Super. 175, 420 A.2d 486 (1980) (jury selection immediately after suppression hearing); *Commonwealth v. Wharton*, 250 Pa.Super. 25, 378 A.2d 434 (1977) (one day between hearing and jury selection); *Commonwealth v. Fisher*, 244 Pa.Super. 361, 368 A.2d 762 (1976) (trial began two days after completion of suppression hearing) (all concluding that trial commenced on date of

suppression hearing).[2]  Similarly, in *Commonwealth v. Bell*, 328 Pa.Super. 35, 476 A.2d 439 (1984), the court considered whether a pre-trial hearing on defendant's motion for change of venue constituted commencement of trial. Observing that the motion had been reserved for the time of trial and that the guilt-determining process, "with the jury being sworn and testimony taken," began only two days later, the court in *Bell* concluded that for the purpose of Rule 1100 trial had commenced on the date of the hearing.

In each of these prior cases the court has dealt with a pre-trial hearing which was plainly not part of the guilt-determining process.  As Judge Spaeth has articulated,

> In a functional sense, a suppression hearing cannot "lead into" the guilt-determining process because it is not part of that process but is simply a way of administering the exclusionary rule. 3 LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 11.2 (1978). Referring to the distinction between a suppression hearing and a trial, the United States Supreme Court has said:
>
> > We must remember also that we are not dealing with the trial of the criminal charge itself.... . The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its

**2.** In *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981), a two and one-half year period intervened between the suppression hearing and the actual trial.  The supreme court, however, agreed with the Commonwealth's argument that for Rule 1100 purposes trial commenced on the date of the suppression hearing "since that Motion [to Suppress] was made 'returnable at the time of trial before the trial judge' and since the trial court thus took a substantial 'first step' leading directly into the guilt determining process." *Id.*, 495 Pa. at 496, 434 A.2d at 1200.  The court further observed that the prosecution was prepared to proceed to trial but for the suppression hearing and that "[t]hese facts reflect that the time and resources of the trial court and the prosecution were committed in a substantive, rather than a pro forma, manner to the commencement of trial...." *Id.* Additionally, in *Jones* the Commonwealth had appealed from the grant of the suppression motion.  The supreme court held that the appeal was an "automatic supercedeas of the operation of Rule 1100" because its effect was to deprive the trial court of jurisdiction to proceed with the trial.

probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment.

*McCray v. Illinois*, 386 U.S. 300, 307, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62 (1967).

*Commonwealth v. Machi*, 294 Pa.Super. 338, 343 n. 3, 439 A.2d 1230, 1232–33 n. 3 (1982). It is likewise true that a motion for change of venue as in *Bell, supra,* is not part of the guilt-determining process but rather affects only the situs of that process. As a result, it has been the time between that pre-trial hearing and the actual trial which has been held determinative.

■ The pre-trial hearing in the instant case, however, differs significantly from the suppression hearings and change of venue proceeding in the prior cases. At the pre-trial hearing on July 22, 1981, appellant raised a multi-faceted constitutional challenge to 18 Pa.C.S.A. § 5903, the statute under which she had been charged. Unlike a motion to suppress or to change venue, appellant presented a motion to dismiss the complaint lodged against her. If successful, the charges against the appellant would *necessarily* have been avoided and the appellant discharged. Therefore, consideration of appellant's constitutional challenge to the obscenity statute was itself a process of promptly determining the appellant's asserted innocence. As such it constituted a "first step in the trial" for purposes of Rule 1100, tolling the 180-day period. *See Commonwealth v. Lamonna*, 473 Pa. 248, 373 A.2d 1355 (1978) (Eagen, C.J. concurring). Appellant relies heavily on "pre-trial" nomenclature used by the court and litigants in describing the July 22 proceedings before Judge Garb in arguing that it was not the commencement of trial. Of course, it is the substance rather than the designation of the proceedings which controls. Otherwise, a trial could never commence for Rule 1100 purposes until the initiation of the actual evidentiary proceedings of the guilt determining process. Appellant freely chose to reach her goal of

acquittal by a "first step" which required the court to resolve complicated legal issues which fairly required briefing, deliberation and disposition. Appellant then sought to test an adverse determination on appeal. That the process was necessarily time consuming makes it no less an elected stage which led directly to the guilt determining process.

This is not to say, however, that all pre-trial hearings on a defendant's motion to dismiss will constitute the commencement of trial under Rule 1100. Unlike, for example, a finding that the Commonwealth failed to assert criminal charges within the applicable statute of limitations period, a ruling that the "violated" statute is unconstitutional indicates that there was no valid prohibition on the defendant's actions and, *a fortiori,* no culpable conduct by the defendant. It is more akin to a finding of innocence than a discharge under the statute of limitations which reflects only a legislative determination that it would be unfair to prosecute the defendant for his otherwise culpable behavior.

We now hold that for Rule 1100 purposes appellant's trial commenced on July 22, 1981, within the 180-day period and accordingly find no violation of appellant's speedy trial rights as guaranteed by Rule 1100.

■ Appellant argues that 18 C.Pa.S.A. § 5903—Obscene and other sexual materials—is unconstitutionally vague and overbroad. Constitutional attacks on this provision have been consistently defeated in opinions by our appellate courts. *American Booksellers Ass'n., Inc. v. Rendell,* 332 Pa.Super. 537, 481 A.2d 919 (1984); *Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984); *Commonwealth v. Doe,* 316 Pa.Super. 1, 462 A.2d 762 (1983); *Long v. 130 Market St. Gift & Novelty,* 294 Pa.Super. 383, 440 A.2d 517 (1982). Specifically, it is claimed that in the definition of "obscene materials" the term "prurient interest" in subsection (1) is not further defined to refer to a

prurient interest "in sex."[3] Thus, it is argued that the words are unconstitutionally vague or overbroad because they are self-defined and may relate to a prurient interest in something other than sex. The argument must fail on any account. An accepted definition of prurient is "having lascivious thoughts or desires: Lewd" *Websters New Collegiate Dictionary.* Moreover, any reading of the obscenity statute makes it patently clear that the provision deals with a prurient interest in sex. Most importantly, the Pennsylvania statute had dutifully followed the language suggested by the United States Supreme Court in defining the permissible scope of regulation of works which depict or describe sexual conduct:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the *prurient interest;* (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431, (1973). (Emphasis added.)

It is next argued that the word "lewd" is unconstitutionally vague as used in the following context:

> **"Sexual conduct."** Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals.

■ Appellant's argument has no merit. Her attack is upon plain language which by any definition would refer to any licentious depictions of the genitals. Again, the language of the act has been copied from *Miller.*

We emphasize that it is not our function to propose regulatory schemes for the States. That must await their

---

**3.** Appellant, in her brief, while purporting to repeat the *Miller* definition, has inaccurately added the words "in sex."

concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and *lewd exhibition of the genitals*. (emphasis added.)

*Id.* at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

The unyielding efforts to constitutionally dismantle obscenity statutes by verbal dissection has not received judicial favor. In a landmark case, the United States Supreme Court stated:

It is argued that the statutes do not provide reasonably ascertainable standards of guilt and therefore violate the constitutional requirements of due process. The federal obscenity statute makes punishable the mailing of material that is "obscene, lewd, lascivious, or filthy ... or other publication of an indecent character." The California statute makes punishable, inter alia, the keeping for sale or advertising material that is "obscene or indecent." The thrust of the argument is that these words are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere.

Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. "... [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices...."

These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark "... boundaries sufficiently distinct for judges and juries fairly to

administer the law .... That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.

*Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1499 (1957) (citations omitted) (footnotes omitted). *See, also, Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

■ In a highly generalized argument, appellant urges that the complaint issued in this case violates her rights under the United States Constitution. It is argued that the complaint was not adequate to apprise appellant of what she must prepare to meet. Our examination of the criminal information discloses that it fully complies with statutory and constitutional requirements and that it is adequately descriptive of the offending material found in the copy of the publication "Wedding Orgy" which was purchased from appellant and exhibited to the issuing magistrate. In addition, appellant was given full notice of the time, date and place of the offense. *See generally Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Commonwealth v. Tumolo,* 455 Pa. 424, 317 A.2d 295 (1974); *Commonwealth v. Lee,* 454 Pa. 526, 312 A.2d 391 (1973); *Commonwealth v. Rolinski,* 267 Pa.Super. 199, 406 A.2d 763 (1979); *Commonwealth v. Bradshaw,* 238 Pa.Super. 22, 364 A.2d 702 (1975); *Commonwealth v. Levenson,* 225 Pa.Super. 318, 303 A.2d 838 (1973). Similarly, appellant's argument that the material under consideration in this case is not legally obscene, is simply contradicted by the evidence which contained abundant photographs and descriptions of clearly offensive material under the *Miller* standards. Appellant's attack is essentially one of the sufficiency of the evidence under which we are required to review the evidence in a light most favorable to the verdict winner. *Commonwealth v. Keblitis,* 500 Pa. 321, 456 A.2d 149 (1983); *Commonwealth v. Martin,* 481 Pa. 515, 393 A.2d 23 (1978); *Commonwealth v. Cotton,* 338 Pa.Super. 20, 487

A.2d 830 (1984). Finally, appellant argues that she is entitled to a new trial since the court sustained an objection to a question asked by her counsel to an expert witness called by appellant. The question dealt with the applicability of contemporary community standards as a measure of patent offensiveness. A reading of the record shows that appellant's argument is totally devoid of merit as the court permitted counsel to question the witness and, in addition, charged the jury in accordance with appellant's request in this regard.[4] Lastly, we find the court's charge conformed to the law. *McCay v. Philadelphia Elec. Co.*, 447 Pa. 490, 291 A.2d 759 (1972). Where the subject matter is adequately and properly covered in the charge given, it is not error to fail to charge in the exact language requested. *Duffy v. National Janitorial Service, Inc.*, 429 Pa. 334, 240 A.2d 527 (1968); *Donaldson v. Sepesy*, 415 Pa. 194, 202 A.2d 823 (1964); *Bohner v. Stine*, 316 Pa.Super. 426, 463 A.2d 438 (1983).

Judgment of sentence affirmed.

DEL SOLE and McEWEN, JJ., join in this opinion.

SPAETH, President Judge, and BROSKY, J., file concurring opinions.

WIEAND, J., files concurring opinion, in which ROWLEY, BECK and TAMILIA, JJ., join.

SPAETH, President Judge, concurring:

I am unable to agree with the majority's conclusion that for Rule 1100 purposes appellant's trial "commence[d]" when the hearing was held on her pre-trial motion challenging the constitutionality of the statute she was charged with violating. The majority's conclusion depends, I sug-

---

**4.** At the conclusion of the charge, the following was stated to the jury after an off-the-record discussion:

THE COURT: When I talked about patently offensive, I mean, does it exceed the limits of contemporary society standards.
Does everybody agree now? At least, does everybody agree to that?
MR. OSHTRY: [Counsel for appellant] Yes.
MR. WILLIAMS: [Asst. District Atty.] Yes.

gest, upon an artificial definition of "commence," and the consequences of accepting the majority's reasoning persuade me that it is unsound. In the present case, appellant's trial "commenced," in the obvious and matter of fact sense of that word, very shortly after we returned the record to the trial court. Suppose, however, that appellant's trial had not commenced until one year—or two, or even three—after we had returned the record. By the majority's reasoning, the delay would be immaterial: by asserting her right to challenge the constitutionality of the statute she was charged with violating, appellant would have forfeited her right to a speedy trial.

Nevertheless, I agree with the majority that appellant was not denied her right to a speedy trial, although I reach that conclusion by reasoning different from the majority's. In my view, we may, and should, decide this case on settled principle without resort to a redefinition of "commence." On settled principle, the period during which the trial court decided appellant's pre-trial motion and the period during which we decided her petition for leave to appeal are both excludable, and when these periods are excluded, it will be seen that appellant was timely tried.

Rule 1100 is not required by the provision in the Sixth Amendment of the United States Constitution that an accused has a right to a speedy trial, *Commonwealth v. Sadler,* 301 Pa.Super. 228, 232, 447 A.2d 625, 627 (1982), but it is intended to implement and give substance to that provision. *Jones v. Commonwealth,* 495 Pa. 490, 499, 434 A.2d 1197, 1201 (1981); *Commonwealth v. Mitchell,* 283 Pa.Super. 455, 461, 424 A.2d 897, 900, *cert. denied sub nom. Mitchell v. Pennsylvania,* 454 U.S. 851, 102 S.Ct. 292, 70 L.Ed.2d 141 (1981). Like the Sixth Amendment, Rule 1100 is not one-sided: it is "to protect an accused's right to a speedy trial and also to protect society's right to effective prosecution of criminal cases." *Commonwealth v. Jones,* 314 Pa.Super. 515, 523, 461 A.2d 276, 280 (1983). The rule is to prevent oppressive pre-trial incarceration, minimize the anxiety of the accused, and limit the possibility that the

defense will be impaired. *Commonwealth v. Roundtree,* 469 Pa. 241, 254, 364 A.2d 1359, 1365 (1976), *citing United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). *See also Commonwealth v. Bennett,* 236 Pa.Super. 509, 516, 345 A.2d 754, 757 (1975) (Rule 1100 helps to ensure to preservation of evidence).

The general requirement of Rule 1100, that the accused must be tried within 180 days, has certain exceptions, stated in the Rule itself and developed in the case law. Thus, in calculating the 180-day period, one does not include a period during which the accused was "unavailable," *Commonwealth v. Cohen,* 481 Pa. 349, 392 A.2d 1327 (1978), or a period representing a continuance granted at the request of the accused, *Commonwealth v. Robinson,* 498 Pa. 379, 446 A.2d 895 (1982); also, the accused may waive his rights under Rule 1100, *Commonwealth v. Manley,* 491 Pa. 461, 421 A.2d 636 (1980). The justification for these exceptions derives from general principle: one may not claim that one should be tried and at the same time prevent one's trial from commencing or agree that it need not commence. *See Commonwealth v. Gallo,* 276 Pa.Super. 562, 566, 419 A.2d 601, 603 (1980) ( "where a defendant is responsible for the delay, he cannot later benefit from the delay that he himself, caused" ).

As the majority points out, appellant's pre-trial motion was of an extraordinary character. Rather than equate the motion to commencement of trial, however, and thereby risk discarding appellant's right to a speedy trial altogether, I should analogize the motion to our settled Rule 1100 exceptions. The analogy, of course, cannot be exact. In one sense, appellant's constitutional challenge of the statute she was charged with violating amounted to a request for a continuance; for implicit in her motion was the request that she not be tried until the court ruled upon her motion.[1] *See Commonwealth v. Wade,* 475 Pa. 399, 405, 380 A.2d 782,

---

**1.** I emphasize that the analogy to a continuance is not exact because, as JUDGE WIEAND notes, the rule on how the period of continuance is to be treated in calculating the 180-day period has been changed since 1981 when appellant filed her pre-trial motion.

785 (1977) (defendant's statement to district justice that he intended to obtain a particular attorney as counsel "amounted to a request for a continuance" that remained open-ended until the attorney was retained). In another sense, appellant's motion amounted to a waiver of her speedy trial rights during the court's disposition of the motion; for by virtue of her motion, appellant sought not so much to delay trial as to avoid trial altogether as an unconstitutional prosecution. *See Commonwealth v. Brown*, 497 Pa. 7, 438 A.2d 592, 594 (1981) ("[t]here are no formal requirements for a valid waiver of Rule 1100" so long as it is informed and voluntary). The critical point, as I see it, is that in instituting her constitutional challenge, appellant initiated foreseeable delay for which the Commonwealth was not responsible. The period extending from the date of appellant's motion to the date of the trial court's order denying the motion should therefore be excluded from the 180-day period. To permit the period to run while the court deliberated on the motion would be to permit appellant to wield her right to a speedy trial in an unjust and uncontemplated manner. *See Commonwealth v. Brown, supra,* (Rule 1100 should not be construed so as to encourage gamesmanship on the part of the accused).

The period extending from the date of appellant's petition for leave to file an interlocutory appeal to the date of our disposition of the petition likewise should be excluded, for by virtue of Pa.R.A.P. Rule 1701(a),[2] the petition precluded the trial court from proceeding with the case. *See also Commonwealth v. Paprocki*, 327 Pa.Super. 270, 224, 475 A.2d 792, 794 (1984). By filing the petition appellant prevented her trial from commencing as effectively as if she had become ill or had fled the jurisdiction. In terms of Rule 1100, therefore, while we deliberated on her petition, appellant was "unavailable."

**2.** Pa.R.A.P. Rule 1701(a) states: "Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."

When the period during which the trial court decided appellant's pre-trial motion and the period during which we decided her petition are thus both excluded, it will be seen that appellant was timely tried.

The complaint was filed on February 11, 1981. On July 15 (Day 154 of the 180-day period), appellant filed her pre-trial motion challenging the constitutionality of the obscenity statute. On July 22, 1981 (the day of the hearing on the motion), appellant executed a 37-day waiver, effective August 29, 1981. On October 16, the trial court denied appellant's pre-trial motion and scheduled trial for November 9, 1981. Appellant then executed another waiver, for the period from November 9 through December 7, 1981, so that she could file her petition to this court for leave to file an interlocutory appeal. On February 10, 1982, this court denied appellant's petition. The trial court then scheduled trial for April 19, 1982, but because of continuances requested by the defense, trial did not commence until June 7, 1982.

As I have just explained, I should exclude the period from July 15 through October 16, 1981 (filing of pretrial motion to denial of motion). The 180-day period therefore stopped running on July 14 (day 153). When the trial court denied appellant's motion on October 16, 1981, the 180-day period started running again, but appellant's waiver of the period November 9 through December 7, 1981, again stopped the running of the 180-day period, at Day 177. During this waived period, appellant filed her petition for leave to file an interlocutory appeal, and, also as just explained, by that action she made herself "unavailable." On February 10, 1982, we dismissed appellant's petition. That action, however, did not at once restart the 180-day period, for under Pa.R.A.P. 2572,[3] we had thirty days to remand the record to the trial court; until we remanded the record, the trial court could not proceed, and appellant therefore remained una-

3. Pa.R.A.P. 2572(a)(1) states: "The record shall be remanded to the court or other tribunal from which it was certified at the expiration of 30 days after the entry of the judgment or other final order of the appellate court possessed of the record."

vailable.  The record does not disclose exactly when we remanded the record, but it was within the thirty day period, for on March 8, 1982, the trial court scheduled trial for April 19, 1982.

It is arguable that since by this calculation the 180-day period stopped running on the 177th day, one of two events had to occur for appellant to be timely tried:  either the trial court had to commence appellant's trial within three days after it got the record back from us on remand;  or the Commonwealth, within those three days, had to file a petition for an extension of time within which the trial should commence;  and since neither of these events did occur, appellant should be discharged.  This argument, however, is not persuasive, for it overlooks settled case law.

In *Commonwealth v. Robinson*, 498 Pa. 379, 446 A.2d 895 (1982), the Supreme Court was faced with a Rule 1100 challenge in which there was a 16-day interregnum between the end of a defense-requested continuance and the date of trial.  The Court rejected the defendant's contention that the 16 days were not excludable from the 180-day period. The Court relied on the principle that "once it is determined that defendant is unavailable [as the defendant was because of the continuance], the critical inquiry is whether actual delay resulted from defendant's unavailability.  'If the "unavailability" results in an actual delay in the proceeding, that delay is automatically excluded.' "  *Id. quoting Commonwealth v. Millhouse*, 470 Pa. 512, 517, 368 A.2d 1273, 1276 (1977).  Since the 16-day delay was the result of a defense-requested continuance, because the continuance required placing the defendant's trial on "backup status," it was automatically excluded.  *See also Commonwealth v. Donaldson*, 334 Pa.Super. 473, 483 A.2d 549 (1984); *Commonwealth v. Derrick*, 322 Pa.Super. 517, 469 A.2d 1111 (1983).

Here, appellant's petition for leave to file an interlocutory appeal rendered her unavailable for trial.  Given that, we must look to see whether appellant's unavailability resulted in any delay beyond the date on which this court remanded the record to the trial court.  Plainly, it did;  some delay in

scheduling a case for trial is inevitable whenever we remand, for the trial court cannot be expected to drop everything else and proceed at once with the case remanded. Here we do not know from the record exactly how much delay occurred, for as mentioned, the record does not disclose exactly when we remanded the record; but we do know that the delay was slight, for on March 8, 1982, less than thirty days after our decision denying appellant's petition for leave to file an interlocutory appeal, the trial court scheduled trial for April 19, 1982, and but for appellant's further request for continuance, trial would have commenced then.[4]

Our cases establish that unavailability cannot be defined precisely but must be determined according to the facts of each case. *Commonwealth v. Ressler*, 308 Pa.Super. 438, 454 A.2d 615 (1982). Thus in *Commonwealth v. Gorham*, 341 Pa.Super. 499, 491 A.2d 1368 (1985), we held that when the defendant failed to appear for trial, the court's continuance of trial to a date 35 days hence was reasonable and fairly attributable to the defendant's unavailability. *Cf. Commonwealth v. Colon*, 317 Pa.Super. 412, 427, 464 A.2d 388, 396 (1982) (where only two days left before run date, Commonwealth entitled to extension since "it would have been tantamout to a physical impossibility to have [trial] rescheduled in those two days"). I therefore have no difficulty in finding that the delay from the date of our remand to the trial court to the date set for trial, April 19, 1982, was fairly attributable to appellant's unavailability. The delay is therefore "automatically excluded," *Commonwealth v. Robinson, supra,* from which it follows that appellant was timely tried.

As to the majority's disposition of the remaining issues, I join.

SPAETH, President Judge, wrote the concurring opinion before the expiration of his term on the court.

---

**4.** As noted, trial was not actually held until June 7, 1982, as a result of continuances requested by appellant. This period of delay, however, is all excludable time.

362

BROSKY, Judge, concurring:

I join in the Concurring Opinion of President Judge Spaeth. I would only add that I have a different and, perhaps, more fundamental reason for disagreeing with the majority's conclusion that appellant's trial commenced for Rule 1100 purposes when the hearing was held on her pre-trial motion challenging the constitutionality of 18 Pa. C.S. § 5903.

As noted by the majority, the comment to Rule 1100 states the following:

It is not intended that preliminary calendar calls should constitute commencement of a trial. For the purpose of this rule, *a trial commences when the trial judge determines that the parties are present and directs them to proceed* to voir dire or to opening argument, or *to the hearing of any motions which had been reserved for the time of trial,* or to the taking of testimony, or to some other such first step in the trial (emphasis added).

I agree with the majority that case law has interpreted this comment as setting forth two requirements which must be met before a hearing on a motion can be considered to mark the commencement of trial under Rule 1100: (1) the accused is adequately warned that the hearing has been reserved until the time of trial and (2) the hearing actually leads directly into the guilt-determining process. See *Commonwealth v. Dozier,* 258 Pa.Super. 367, 392 A.2d 837 (1978). The majority's analysis focuses solely on the second requirement and leads it to the conclusion that a hearing on the type of motion involved in the instant case intrinsically leads into the guilt-determining process. Whether or not this conclusion is correct, the fact remains that the majority's analysis overlooks the first requirement that the hearing on the motion be reserved for time of trial and that the defendant be adequately warned of such reservation.

I believe the record is clear that the hearing of appellant's pre-trial motion was not reserved for time of trial. Since *Dozier's* first requirement was thus not satisfied, I must disagree with the majority's conclusion that trial com-

menced when the hearing was held on appellant's pre-trial motion.

WIEAND, Judge, concurring:

The members of this Court are agreed that appellant is not entitled to have her conviction set aside on grounds that she failed to receive a speedy trial in accordance with Pa.R.Crim.P. 1100. The record discloses a criminal action for violation of the obscenity laws which was prosecuted diligently by the Commonwealth. The delay was caused solely by the defense. Therefore, I concur in the Court's determination that appellant is not entitled to be discharged on Rule 1100 grounds.

Assuming, without deciding, that the constitutionality of a criminal statute can properly be challenged by an omnibus pre-trial motion filed pursuant to Pa.R.Crim.P. 306, it seems clear, in any event, that a pre-trial hearing on an omnibus motion can be equated with the commencement of trial only by creating a fiction regarding the commencement of trial. This, in my judgment, is unwise. I agree with President Judge Spaeth that the trial in this case did not commence when the court began to hear the pre-trial omnibus motion.

I agree also that appellant sought to delay the trial in order to obtain a ruling on the constitutional issue and thereby, in a practical sense, obtained a postponement or continuance of the trial. The fact that appellant was able to delay the trial by continuance, however, did not result in excludable time for purposes of computing the time for trial in accordance with Rule 1100. The amendment to paragraph (d) of Rule 1100, which excluded "any continuance granted at the request of the defendant or his attorney," became effective and applied only to continuances requested on or after January 1, 1982. The postponement in this case for the purpose of allowing the court to decide the constitutional issue came to an end with the court's decision on October 16, 1981.

The criminal complaint was signed on February 11, 1981. The pre-trial hearing was commenced on July 22, 1981, the 161st day. On that day, appellant waived Rule 1100 for a period of thirty-seven days. The adjusted run date, therefore, became September 16, 1981.[1] However, trial could not be commenced until some time after October 16, when the trial court rendered a decision on appellant's pre-trial motions. In the interim, as President Judge Spaeth has observed, appellant's pre-trial motion had, in effect, rendered her unavailable for trial.

In the meantime, the Commonwealth had also filed a petition for an extension of time, as permitted by Pa.R. Crim.P. 1100(c), because of the undecided pre-trial motions, and the court had set a hearing on the petition for October 30, 1981. On or about October 20, 1981, the parties were notified that trial would commence on November 9, 1981 and that the hearing on the Commonwealth's petition for extension would be heard immediately prior to trial. Subsequently, both the trial and the extension hearing were continued until December 7, 1981; and appellant agreed to waive Rule 1100 for the period from November 9, 1981 through December 7, 1981. This continuance was made necessary by appellant's announced intention to file a petition in the Superior Court to allow an appeal from the interlocutory order denying the relief requested in the pretrial motion.

The mischief for Rule 1100 purposes was caused by appellant's attempt to file an interlocutory appeal. On November 18, 1981, at appellant's request, the trial court certified the constitutional issue for appellate review and entered a supersedeas which stayed all further proceedings in the trial court. As a consequence, trial did not commence on December 7, 1981, and the Commonwealth's pending extension petition was not heard. A petition for special

1. The Commonwealth contends that appellant, on September 15, 1981, filed a waiver of Rule 1100 until November 15, 1981 (Appellee's Brief at pp. 4 and 5). However, my examination of the record fails to produce factual support for this contention.

allowance of an appeal was filed in the Superior Court, but this Court, on February 10, 1981, denied the petition and rejected the appeal. The case was thereupon remanded for trial. Trial was scheduled for April 19, 1982, but commencement of trial, because of defense requested continuances, was further delayed until June 7, 1982.

When the Superior Court denied appellant's petition for allowance of an appeal, a petition for an extension of time within which to commence trial under Rule 1100 was pending in the trial court. This petition was not heard before trial. In my judgment, a hearing thereon was unnecessary. After February 10, 1982, the Commonwealth had a period of 120 days within which to commence trial. Appellant was tried within that time. The trial, therefore, was timely.

Pa.R.Crim.P. 1100(e) provides as follows:

(e)(1) When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within one hundred and twenty (120) days after the date of the order granting a new trial.

(2) When an appellate court has granted a new trial, or has affirmed an order of a trial court granting a new trial, the new trial shall commence within one hundred and twenty (120) days after the appellate court remands the record to the trial court. The date of remand shall be the date as it appears in the appellate court docket.

The comment to the rule suggests that the rule has application also to the "withdrawal, rejection of, or a successful challenge to a guilty plea" and to "the period for commencing trial following the declaration of a mistrial." The same considerations which make the rule necessary in these enumerated situations require that a period of 120 days be extended for the commencement of trial after an appellate court, for whatever reason, has remanded the action to the trial court to start again the guilt determining process. It makes no sense to me to hold that an additional 120 days is necessary to commence trial in response to an award of a

new trial but unnecessary where the case has been remanded for trial after denial of a petition for allowance of an appeal. To require the Commonwealth in such a situation to commence trial immediately upon remand because the 180 day period is about to expire, or, at least to file an immediate petition for extension, does not serve either to protect the accused's right to a speedy trial or to protect society's right to effective prosecution in criminal cases. Instead, it can serve only to create a trap for the unwary and thereby encourage the various forms of Rule 1100 gamesmanship which this Court has consistently decried.

The broad interpretation which I would place upon Rule 1100(e) has the advantage of establishing a straightforward, uniformly applied method for insuring a speedy trial in criminal cases which, for whatever reason, have been before an appellate court and are remanded for trial. In all such cases, trial must begin within 120 days after remand.

To the extent that the panel decision in *Commonwealth v. Paprocki*, 327 Pa.Super. 270, 475 A.2d 792 (1984) suggests a different rule, I would cause it to be overruled. To hold that a petition for allowance of an appeal has no other effect than to stay the running of Rule 1100 temporarily can serve only to encourage manipulation of the rule to avoid trial. If a petition for allowance of appeal can be filed on the 179th day, such a rule would require that the Commonwealth either commence trial on the day following denial of the petition or file a petition for extension. I do not believe that the Supreme Court intended this type of gamesmanship. I would hold that upon remand for trial the Commonwealth in all instances is to have a period of 120 days within which to commence trial.

In other respects, I join the opinion of the majority and its decision to affirm the judgment of sentence.

ROWLEY, BECK and TAMILIA, JJ., join in this concurring opinion.