452 A.2d 238

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Kenneth MARTIN.**

Superior Court of Pennsylvania.

Argued April 23, 1982.

Filed Sept. 17, 1982.

Reargument Denied Nov. 29, 1982.

Petition for Allowance of Appeal Denied Feb. 11, 1983.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Michael Marino, Norristown, for appellee.

Before WICKERSHAM, BROSKY and WIEAND, JJ.

WICKERSHAM, Judge:

This case involves a Commonwealth appeal from an order of the Honorable William T. Nicholas, dated September 29, 1981, dismissing the criminal charges against Kenneth Martin pursuant to Pa.R.Crim.P. 1100.[1] For reasons set forth

1. **Rule 1100. Prompt Trial**

    . . . .

    (2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

    . . . .

hereinafter, we reverse and remand for proceedings consistent with this opinion.

On May 8, 1981 a preliminary hearing was held before the District Justice Donald Riehl, King of Prussia, Montgomery County at which hearing Lillian Wolfberg gave the following sworn testimony:

Q. Mrs. Wolfberg, where do you live?

A. 241 Murray Drive, King of Prussia.

. . . .

Q. Directing your attention to May 24th, 1979, did something unusual occur at your apartment that day?

A. Yes, that is the day that the apartment—my mother was staying with us at the time.

Q. What is your mother's name?

A. Her name is Fanny Chait.

Q. And how old is your mother?

A. She is past ninety now but she was eighty-eight years of age at the time.

. . . .

Q. When you left your apartment that morning who remained there, if anyone?

(b) For the purpose of this Rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*

(c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.

. . . .

(d) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest; provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 1100;

(3) such period of delay at any stage of the proceedings as results from:

(i) the unavailability of the defendant or his attorney;

(ii) any continuance granted at the request of the defendant or his attorney.

A. My mother.

Q. And she was alone?

A. She was alone. She was supposed to have gone home that afternoon and then she stayed in the apartment to pack her belongings and she was supposed to be taken home that afternoon.

. . . .

Q. Now, sometime that morning did you have occasion to call home, your home?

A. Yes, we did call about eleven o'clock.

. . . .

Q. Did you go home?

A. Yes, immediately after the phone call.

Q. And when you went home what did you observe?

A. My mother, I will never forget the way she looked and the hurt and what they did to her.

Q. How did she look?

A. She was in the state of shock. Her hands were swollen because she tried to release herself. She was tied up with the TV cord and she tried to release herself and as a result she had torn every blood vessel in her wrist and she was shaking and the place was in shambles. The entire apartment was in shambles and it was the most shocking thing I have ever observed.

. . . .

Q. You indicated things were missing. What did you find missing?

. . . .

A. Everything that I had in the way of sterling; everything that I had in the way of jewelry. Being in the business, my husband has given me some beautiful things that had a lot of sentiment. I had a lot of things given to me by my grandmother that were irreplaceable and other things people and the family had given me, things that were irreplaceable.

Q. Did you estimate the total value of your loss of the things taken?

. . . .

A.  Anywhere between forty and fifty thousand dollars, maybe more.

Record at 4–9.

Martin was charged in separate bills of information with robbery, burglary and criminal conspiracy along with simple assault and recklessly endangering another person. On September 15, 1981 a hearing was held at the Montgomery County Courthouse before the Honorable Anthony J. Scirica at which point Steven T. O'Neill, Esquire, assistant district attorney related to the court the following facts:

MR. O'NEILL: Thank you, Your Honor.

. . . .

The offenses are alleged to have occurred on May 24, 1979. A Criminal Complaint was drawn up against the Defendant and filed on June 8, 1979. The Defendant was arrested by the Tredyffrin Township Police Department in Chester County, on June 8, 1979, but not on our Complaint, on the Complaint from Chester County burglaries.

At that time, the Defendant was granted bail. *He made bail on June 9, 1979, and that was the last that was ever seen of the Defendant until March 20, 1981, at which time he waived extradition from Texas.* He was transported back to the Commonwealth on March 27, 1981, by the Chester County Sheriffs.

. . . .

From my calculations, Your Honor, the 180th day from the date the Complaint was filed on June 8, 1979, would have been December 5, 1979. It will be the Commonwealth's allegations in a petition to be filed that the Defendant was, in fact, unavailable from June 9, 1979, to March 20, 1981, and he was then physically in the Commonwealth on March 27, 1981.

The 180th day from March 20, 1981, is September 16, 1981, and the 180th day from March 27, 1981, is September 23, 1981. With both of those dates in mind, the Defendant's trial was scheduled 15 days after arraignment, so as to give him time for discovery to be provided and also for

any further Omnibus Pre-Trial Motions on behalf of the Defendant to be filed by Mr. Marino.

The case was scheduled for trial today, September 15, 1981. The Commonwealth is prepared to proceed with trial today.

Record at 2–5 (emphasis added).

Trial did not commence, however, on September 15, 1981 because defense counsel was engaged in a trial in the Eastern District of Pennsylvania. After further discussion between court and counsel, Judge Scirica continued the case until September 30, 1981. (Record at 9.)

Defense counsel became available and the matter was called to trial before Judge Nicholas on September 28, 1981 at which time he heard a petition to dismiss under Pa.R. Crim.P. 1100(f). At the conclusion of the hearing on September 29, 1981, Judge Nicholas entered an order of dismissal. The lower court concluded that the Rule 1100 rundate was September 24, 1981, and, consequently, since the case was called for trial four days later dismissed the charges.

The defendant stipulated at the hearing on the Motion to Dismiss that the Commonwealth had exercised due diligence in attempting to locate him and that he was 'unavailable' for purposes of Rule 1100(d)(1), for the entire time from June 8, 1979, the date of the Complaint, to March 20, 1981, the date of his waiver of extradition. [N.T. 5, 9/29/81]

The precise issue thus presented is at what point does the mandatory period in which to commence trial under Pa.R.Crim.P. 1100 begin to run?

The Commonwealth contends that it should begin to run on March 27, 1981, the date on which the defendant was actually returned to Pennsylvania. The defendant contends, and, for reasons which will be more fully explained later, this Court held, that this time calculation must begin with the defendant's waiver of extradition on March 20, 1981. Since the Commonwealth never filed a Petition to Extend the Time for Trial under Pa.R.Crim.P. 1100(c),

this difference of seven days in fixing the starting point for the Rule 1100 calculation becomes critical.

The Court concluded that the Commonwealth had 180 days from March 20, 1981, the date of the waiver of extradition or until September 16, 1981, in which to bring the defendant to trial. This was by virtue of the defendant's unavailability up to the point of the waiver of extradition. The additional eight days, from September 15 to September 22, during which defense counsel was engaged in another trial in Federal Court, must be excluded due to his unavailability. [Rule 1100(d)(1) ]. Thus, the outside 'run-date' for Rule 1100 was September 24, 1981. The Commonwealth must either have brought the defendant to trial by September 24, 1981, or filed a Petition to Extend the Time for Trial under Pa.R.Crim.P. 1100(c). It did neither. Regrettably, the Court was therefore compelled to dismiss the charges.

Lower ct. op. at 3–4.

Justice Kauffman, speaking for the supreme court, recently stated that:

Rule 1100 'serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society,' *Commonwealth v. Brocklehurst*, 491 Pa. 151, 153–54, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson*, 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

. . . .

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be

construed in a manner consistent with society's right to punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

*Commonwealth v. Genovese,* 493 Pa. 65, 69–70, 72, 425 A.2d 367, 369–70, 371 (1981).

In *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977), the supreme court held that in order to avail itself of an exclusion, under the speedy trial rule, of periods of delay for which defendant or his attorney should be deemed responsible, the Commonwealth has a burden of proving, by a preponderance of evidence, the unavailability of the defendant or his attorney and due diligence on the part of the prosecution in attempting to locate and apprehend the defendant.

The Commonwealth submits and we agree that in any fugitive situation there are two discernible periods of unavailability. One is the period prior to location of the defendant and the second period of unavailability is after his location is known but prior to his subsequent return to the state. Each period provides a specific exclusion under Pa.R. Crim.P. 1100(d)(1) of which the Commonwealth may avail itself if it acts diligently in apprehending and returning the fugitive.

The period of time between a defendant's waiver of extradition and his subsequent return to Pennsylvania may be held ultimately excludable if the Commonwealth demonstrates due diligence in effectuating that return. Here the Commonwealth has shown due diligence. Part and parcel of contesting extradition is that portion of time which involves the return of the fugitive after the extradition contest has been resolved; either through an ultimate waiver or after

an order of the court granting extradition. With the seven (7) days in question being excludable, no petition pursuant to Pa.R.Crim.P. 1100(c) would be necessary. In *Commonwealth v. Roman,* 494 Pa. 440, 431 A.2d 936 (1981), the court stated:

> In order for time during which a defendant is incarcerated in another jurisdiction to be excluded pursuant to Pa.R.Crim.P. 1100(d)(1), the Commonwealth must prove by a preponderance of the evidence that, despite due diligence, the presence of the defendant could not be secured. *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977), *Commonwealth v. Kovacs,* 250 Pa.Super. 66, 378 A.2d 455 (1977).
>
> A review of the record evinces a finding of due diligence by the Commonwealth *in attempting to acquire custody of appellant for prosecution in Pennsylvania.*

*Id.,* 494 Pa. at 445–46, 431 A.2d at 938 (emphasis added).

Thus, the seven (7) days being excludable, the Commonwealth would not have to file a petition for extension of time pursuant to Rule 1100(c).

In *Commonwealth v. Blackburn,* 272 Pa.Super. 1, 414 A.2d 638 (1979), a complaint was filed on September 7, 1975, and a detainer was lodged against the defendant who was then in custody in Ohio. The defendant pled guilty in Ohio on February 4, 1976; he was sentenced to incarceration. Extradition proceedings were begun after that date and the defendant was ultimately returned to Pennsylvania exactly four (4) months later on June 4, 1976. The trial court held the defendant was unavailable until June 4, 1976.

> The complaint was issued and a detainer lodged against the defendant by the Commonwealth of Pennsylvania on September 7, 1975. At this time, the defendant was being held by Ohio authorities awaiting trial for robbery in that jurisdiction. The defendant plead guilty to that charge on February 4, 1976; he was sentenced; and he was incarcerated. Extradition proceedings were then instituted and the defendant was returned to this jurisdiction on June 4, 1976. On June 12, 1976, a pre-trial motion to quash the information based on a Violation of Pennsylvania Rules of

Criminal Procedure, Rule 1100 was argued and denied. The pretrial hearing judge determined that *the period of time during which the defendant was held in Ohio was such that it should be excluded* from the one hundred and eighty day time period of Rule 1100 because of the unavailability of the defendant. The lower court concluded that due diligence was exercised *in returning the defendant to Pennsylvania* and that under the circumstances, no violation of defendant's right to a speedy trial occurred. The trial commenced on November 24, 1976, and ended December 1, 1976.

. . . .

The second issue we address is whether the pre-trial hearing court erred in not quashing the bill of information and, consequently, whether the defendant's right to a speedy trial was denied by the failure of the Commonwealth to diligently extradite him from the State of Ohio. We find that the defendant was not denied his right to a speedy trial. Under Pa.Rules Crim.P. 1100(a)(2):

> Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974, shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

Pa.Rules Crim.P. 1100(d)(1) further provides, and is applicable to this case,

> In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
>
> (1) the unavailability of the defendant or his attorney.

Since the defendant was detained in Ohio on robbery charges when the complaint was issued, *and was not returned to the Commonwealth of Pennsylvania until June 4, 1976,* the pre-trial hearing on June 12, 1976, was not unreasonable delay. In addition, the trial commencing on November 24, 1976, was within the one hundred eighty (180) day period. 'It is axiomatic that all periods of delay beyond the mandatory period must be either excluded from the computation of the period or justified by an

order granting an extension pursuant to the terms of Rule 1100 if the Commonwealth is to prevail.' *Commonwealth v. Dozier,* 258 Pa.Super. 367, 373, 392 A.2d 837, 840 (1978), *Commonwealth v. Shelton,* 469 Pa. 8, 14–15, 364 A.2d 694, 697 (1976), quoting *Commonwealth v. O'Shea,* 465 Pa. 491, 496, 350 A.2d 872, 874 (1976). The pre-hearing judge determined that there had been no violation of the one hundred eighty (180) day rule; and, *the court excluded the time the defendant was in Ohio from computation.* Under Rule 1100, trial commences when the lower court calls the case for trial. *The defendant was present on June 4, 1976.* Trial commenced within the one hundred eighty (180) day period.

*Id.,* 272 Pa. at 4–6, 414 A.2d at 639–41. (Emphasis added)

In *Commonwealth v. Polsky,* 493 Pa. 402, 426 A.2d 610 (1981), the court said: "Common sense, the public interest, and justice demand that a defendant not be permitted the windfall of an absolute dismissal under Rule 1100 when he voluntarily absents himself from this jurisdiction, refuses to return, and due diligence by law enforcement authorities fails to secure his return." *Id.,* 493 Pa. at 407–8, 426 A.2d at 613.

More recently, in *Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981), the supreme court stated:

Aside from preventing unnecessary prosecutorial delay, Rule 1100 serves the valid and important purpose of ensuring that an accused, often incarcerated, is not for *any* reason made to wait indefinitely for commencement of his trial. It would be senseless, however, for us to release criminal defendants without trial, or worse, after conviction, unless the Commonwealth's *explicit* duty under the Rule clearly has been violated.... Discharging this defendant, a convicted first degree murderer, for the Commonwealth's failure to observe at most a technical requirement which had never been clearly articulated by this Court would do nothing to protect the rights of criminal defendants and would totally disregard the rights of society.

Accordingly, we reject appellant's contention that he has been denied a speedy trial as guaranteed by Rule 1100. *Id.*, 495 Pa. at 499, 434 A.2d at 1201.

Order reversed and the case remanded for further proceedings consistent with this opinion.