J-S65024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :            PENNSYLVANIA
                                                  :
                    v.                       :
                                                  :
                                                  :
HENRY F. WORTHINGTON JR.       :
                                                  :
                Appellant         :    No. 781 EDA 2017

Appeal from the Judgment of Sentence February 2, 2017
In the Court of Common Pleas of Northampton
County Criminal Division at No(s): CP-48-CR-0001981-2013

BEFORE: OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                     **FILED FEBRUARY 06, 2018**

Henry F. Worthington, Jr. appeals from the judgment of sentence imposed on February 2, 2017, in the Court of Common Pleas of Northampton County following his conviction on two counts of failure to register,[1] as required under Megan's Law.[2] He was sentenced to a term of 48 to 96 months' incarceration.[3] In this timely appeal, Worthington argues his speedy trial

---

[1] 18 Pa.C.S. § 4915(a)(1), (2).

[2] 42 Pa.C.S. §§ 9791-9799. The charges in this case were initially filed against Worthington on June 11, 2012. Worthington then immediately fled the jurisdiction.

[3] Worthington was originally convicted of three counts of failing to register. His original aggregate sentence was for 176 to 352 months' incarceration. The trial court notes in its Pa.R.A.P. 1925(a) opinion that the charge of violating 18 Pa.C.S. § 4915(a)(3) and the sentence attendant thereto has been rescinded and the sentences for the other two charges have been merged, resulting in the current sentence of 48 to 96 months' incarceration.

rights were violated under the Interstate Agreement on Detainers, 42 Pa.C.S. § 9109, Articles III(a) and IV(c), as well as under Pa.R.Crim.P. 600.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm on the basis of the trial court opinion, specifically pages 7-14.[4]

Initially,

> Our standard of review of a Rule 600 determination is whether the trial court abused its discretion. **Commonwealth v. Solano**, 588 Pa. 716, 906 A.2d 1180, 1186 (2006). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." **Commonwealth v. Wright**, 599 Pa. 270, 961 A.2d 119, 142 (2008) (citations omitted). Our scope of review is limited to the record evidence from the **speedy trial** hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party. **Solano**, at 1186.

**Commonwealth v. Selenski**, 994 A.2d 1083, 1087-88 (Pa. 2010).

The standard of review for cases under the Interstate Agreement on Detainers is consistent with those for allegations of speedy trial violations, pursuant to Pa.R.Crim.P. 600.  **See Commonwealth v. Woods**, 663 A.2d 803 (Pa. Super. 1995), cited with approval in **Commonwealth v. Montiore**, 720 A.2d 738, 741 (Pa. 1998), cert. denied, 26 U.S. 1098 (1999).

The factual and procedural history as well as the legal analysis of this matter are all ably set forth in the trial court's Pa.R.A.P. 1925(a) opinion.

---

[4] All other issues addressed by the trial court in its Pa.R.A.P. 1925(a) opinion were abandoned on appeal by Worthington.

Essentially, we find no fault with the trial court's assessment that the Commonwealth demonstrated due diligence in attempting to locate Worthington after he fled the jurisdiction. Additionally, the trial court neither abused its discretion nor committed an error of law in determining that Worthington was brought to trial within the 180-day period proscribed by Pa.R.Crim.P. 600. Because the trial court has provided a thorough description of the underlying facts as well as an error free legal analysis, similarly free from abuse of discretion, we rely upon the trial court's Pa.R.A.P. 1925(a) opinion.

Parties are directed to attach a copy of the trial court's February 2, 2017 decision in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/18

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :
                                                          :
  v.                                                      :            C-0048-CR-1981-2013
                                                          :
HENRY F. WORTHINGTON, JR.        :
         Defendant.                               :

## ORDER OF COURT

**AND NOW**, this $\underline{2^{nd}}$ day of February, 2017, after review and consideration, Defendant Henry F. Worthington, Jr.'s Post-Sentence Motions are **GRANTED IN PART** and **DENIED IN PART.** Specifically, Defendant's motion challenging the legality of his sentence and arguing that the sentences at 18 Pa. C.S.A. §4915(a)(1) and (a)(2) should merge is **GRANTED.** Given that these sentences were being served concurrently, this Order shall serve as a correction of sentence, and the Defendant need not appear for resentencing. In all other respects, the Post-Sentence Motions are **DENIED.** The rationale for the entry of this Order is set forth in the following:

## STATEMENT OF REASONS

### Procedural History

On or about June 11, 2012, Defendant Henry F. Worthington, Jr., a registered sex offender, was charged with three separate registration violations under 18 Pa. C.S.A. §4915(a)(1)-(3). The Defendant immediately fled the jurisdiction. By his own testimony, he found out about the charges and the warrant for his arrest during a traffic stop in Georgia. Subsequently, he was arrested and detained on similar charges in Florida. Those charges were disposed of on December 4, 2012. In late January, 2013, the Defendant executed a written request to be delivered to Pennsylvania under

the Interstate Agreement on Detainers, to face his charges in Pennsylvania. Hearing Exhibit D-2. The Commonwealth received that request on February 4, 2013, and the Defendant arrived in Pennsylvania on or about March 13, 2013.

The Defendant applied for a Public Defender on March 14, 2013, and Michael McGinley, Esquire, was appointed to defend him on March 18, 2013. Hearing Exhibit D-3. The Defendant had an initial preliminary hearing before the Honorable Nancy Matos Gonzalez on April 2, 2013, at which time the affiant failed to appear and the charges were dismissed as a matter of procedure. Exhibits D-4, D-9. The charges were refiled nine (9) days later, on April 11, 2013.

On June 3, 2013, after writing to the Public Defender's Office indicating his desire to proceed *pro se*, the Defendant filed a Motion for Habeas Corpus relief, which he failed to praecipe for hearing. Then, on June 18, 2013, the Defendant once again appeared before District Judge Nancy Matos Gonzalez, at which time he waived his preliminary hearing on the re-filed charges. The Defendant filed a *pro se* Motion to Quash and Dismissal of Charges on July 10, 2013, which came before the Honorable F.P. Kimberly McFadden on July 12, 2013, for a hearing. Judge McFadden denied the motion in a written opinion issued on July 23, 2013. The Defendant filed a subsequent *pro se* habeas corpus motion on August 2, 2013, which Judge McFadden denied in a written opinion dated August 5, 2013.

On August 6, 2013, after executing a written waiver of counsel, Defendant appeared *pro se*[1] before the undersigned for a non-jury trial on the charges. Defendant was found guilty of all charges following a brief non-jury trial. He was sentenced on September 30, 2013, to consecutive terms of forty-eight (48) to ninety-six (96) months for the violation under (a)(1) of the statute;

---

[1]     Although he proceeded *pro se*, Alexander Karam, Esquire, was appointed as stand-by counsel, and was present and available to Defendant throughout his bench trial before the undersigned on August 6, 2013.

2

forty-eight (48) to ninety-six (96) months for the violation under (a)(2) of the statute; and eighty (80) to one hundred-sixty (160) months for the violation under (a)(3) of the statute, for an aggregate term of one hundred seventy-six months (176) to three-hundred fifty-two (352) months.[2]

Defendant appealed his sentence on October 22, 2013. After this Court's grant of serial motions for enlargement of time to file a brief in support of the appeal, the Superior Court dismissed the case on June 24, 2014, citing Defendant's failure to file a brief. Defendant then filed multiple petitions for allowance of appeal *nunc pro tunc* to the Pennsylvania Supreme Court.

After denying Defendant's initial petition on July 23, 2014, the Supreme Court ultimately granted him relief on November 20, 2014, and remanded the matter to this Court for appointment of counsel to assist him in his appeal to Superior Court.. Counsel was appointed by an Order dated December 2, 2014.[3] On January 20, 2015, appointed counsel filed a "Petition to File Post-Sentence Motions and Appeal *Nunc Pro Tunc*," which was granted by the undersigned on January 30, 2015. Defendant's post-sentence motions were filed on April 10, 2015, and denied in part and granted in part by an Order of Court filed on June 17, 2015 following a hearing an briefing schedule.

Pursuant to the June 17, 2015 Order, the Defendant was resentenced on July 17, 2015, and he filed a counseled post-sentence motion on July 22, 2015. The Court set a briefing schedule, and upon consideration, determined that a further resentencing proceeding was necessary. That proceeding was held on December 18, 2015. Defendant filed timely post-sentence motions on December 22, 2015, and a briefing schedule was set. On April 28, 2016, the Court disposed of the

---

[2]     In the interim between his conviction and his sentencing, Defendant filed an appeal of Judge F.P. Kimberly McFadden's July 23, 2015 *and* August 5, 2015 denials of Defendant's *pro se* pretrial motions. It appears that those matters were docketed at 2302 EDA 2013 and 2516 EDA 2013, and that both cases were administratively closed on March 10, 2014.

[3]     On or about December 19, 2014, this Court received an Order from the Supreme Court indicating the denial of an Application for Reconsideration, but it does not appear that any corresponding filings were docketed by the Northampton County Clerk of Criminal Courts.

3

motion, granting it in part and denying it in part. The Defendant filed a motion for reconsideration of sentence on May 5, 2016, which the Court granted on July 12, 2016. Attendant with this procedural history, as of the date of this writing, the Defendant's original sentence has been modified to rescind the charge and sentence at subsection (3) of the statute, and to run the sentences imposed at subsection (2) of the statute concurrent to the sentence imposed at subsection (1).

Thereafter, Defendant filed a counseled petition seeking to file post-sentence motions *nunc pro tunc* and a *nunc pro tunc* appeal to the Superior Court. The same was granted by an Order entered on August 2, 2016, and following an extension of time at the request of Defendant, a hearing was held, his brief was filed on January 9, 2017, and the Commonwealth's brief was filed on January 23, 2017. The post-sentence motions are now ready for disposition.

## Discussion

Defendant's post-sentence motions address two main issues in four separate motions. By the first portion of his motion, he challenges the legality of his sentence, arguing that the sentences imposed at 18 Pa. C.S.A. §4915(a)(1) and (2), should merge.

As set forth in the Judicial Code, the merger doctrine provides that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa. C.S.A. § 9765.

"Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." Commw. v. Raven, 97 A.3d 1244, 1249 (Pa. Super.) appeal denied, 105 A.3d 736 (Pa. 2014). Further, "the plain language of Section 9765

4

precludes courts from merging sentences when each offense contains a statutory element that the other does not." Id.

> [I]n merger of sentences cases, we focus not only on the similarity of the elements of the crimes but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed a single criminal act, in which case there will be merger and only a single sentence may be imposed, or more than a single act, in which case there will be no merger and a sentence may be imposed for each act.

Commw. v. Casella, 458 A.2d 1007, 1009 (Pa. Super. 1983).

In the instant case, Defendant was found guilty of failing to register as required under Megan's Law, and failing to satisfy the registration requirements of verifying his address and providing consent to be photographed. 18 Pa. C.S.A. § 4915(a)(1)-(2).[4] The statute, as enacted at the time of the offenses,[5] provided:

> (a) Offense defined.--An individual who is subject to registration under 42 Pa.C.S. § 9795.1(a) or (a.1) (relating to registration) or an individual who is subject to registration under 42 Pa.C.S. § 9795.1(b) or who was subject to registration under former 42 Pa.C.S § 9793 (relating to registration of certain offenders for ten years) commits an offense if he knowingly fails to:

---

[4] Defendant was apprised of his registration requirement at the time of his release, and on April 14th, he signed a document confirming the same. N.T. 8/6/13, 7:7-25. He initially registered on April 14, 2011. Trial N.T. 8/6/13, 88:1-8. However, Defendant's initial registration date, which is set by the Pennsylvania State Police and from which the anniversary date is calculated, was May 24, 2011. N.T. 8/6/13, 85:2-12. Following his initial registration, Defendant registered a new address on July 6, 2011 in Pipersville, Pennsylvania. Again on May 23, 2012, one day before his first anniversary date, he again registered the Pipersville address and a P.O. box. N.T. 8/6/13, 79-80. On May 25, 2012, just two days after registering the Pipersville address attendant with his annual registration requirement, the Defendant signed a lease, effective June 1, 2012, for an apartment located at 713 East 4th Street in the City of Bethlehem. On June 11, 2012, Defendant's landlord, Brunny Calixto, appeared at the Department to report that she had just learned that the Defendant was a registered sex offender, and he had offered to babysit her young grandson, and upon confirmation that his last registration was made on May 23, 2012 . Affidavit of Probable Cause, ¶¶5-6. Bethlehem City Police Officer Brian Haubert immediately investigated, and confirmed that the Defendant was subject to registration under Megan's Law, that his last registered address was located at 7424 Old Easton Road, in Pipersville, Pennsylvania, and that he had not registered the Bethlehem address. Affidavit of Probable Cause, N.T. 8/6/13, 47-50. Charges were filed the same day. N.T. 8/6/13, 52.

[5] Pennsylvania first enacted Megan's Law on October 24, 1995. 42 Pa. C.SA. §§ 9791- 9799. The law was revised on May 10, 2000, and then again on November 24, 2004. The 2004 amendment was later found violative of the "single subject" rule of Article III, Section 3 of the Pennsylvania Constitution, and it was replaced by the current Sexual Offender Registration and Notification Act ("SORNA") at 42 Pa. C.S.A. §§ 9799.10 et seq. on December 20, 2012. See Commw. v. Woodruff, 2015 WL 991095 (Pa. Com. Pl. Lackawanna Cnty. March 6, 2015).

5

(1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9795.2 (relating to registration procedures and applicability);

(2) verify his residence or be photographed as required under 42 Pa.C.S. § 9796 (relating to verification of residence)

. . .

18 Pa. C.S.A. § 4915(a)(1)-(2).

As referenced in 18 Pa. C.S.A. § 4915(a)(1), 42 Pa. C.S.A. § 9795.2 provided:

(a) Registration.—

(1) Offenders and sexually violent predators shall be required to register with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation. For purposes of registration, offenders and sexually violent predators shall provide the Pennsylvania State Police with all current or intended residences, all information concerning current or intended employment and all information concerning current or intended enrollment as a student.

(2) Offenders and sexually violent predators shall inform the Pennsylvania State Police within 48 hours of:

> (i) Any change of residence or establishment of an additional residence or residences . . .

(2.1) Registration with a new law enforcement agency shall occur no later than 48 hours after establishing residence in another state . . .

42 Pa. C.S.A. § 9795.2.

Separately, 42 Pa.C.S.A. §9796 as referenced by 18 Pa. C.S.A. 4915(a)(2), provided at the

time that:

> **(b) Annual verification by offenders.**--The Pennsylvania State Police shall verify the residence of offenders. For the period of registration required by section 9795.1, an offender shall appear within ten days before each annual anniversary date of the offender's initial registration under section 9795.1 at an approved registration site to complete a verification form and to be photographed.

42 Pa. C.SA. § 9796(a) (emphasis added).

6

Upon review of the foregoing statutory sections, the Court finds that the acts of registering under Megan's Law under 18 Pa. C.S.A. §4915(a)(1), and the act of complying with the requirements of the registration process under 18 Pa. C.S.A. §4915(a)(2) effectively amount to a single criminal act. Accordingly, merger of the sentences imposed at 18 Pa. C.S.A. § 4915(a)(1) and (a)(2) is required, and this portion of Defendant's motion is **GRANTED**.

By the second and final portion of his motion, the Defendant asserts the denial of his speedy trial rights under Articles III and IV of the Interstate Agreement on Detainers and Pa.R.Crim.P. 600. In the first instance, Defendant alleges that he was denied his speedy trial rights pursuant to Article IV[6] of the Interstate Agreement on Detainers ("IAD") at 42 Pa.C.S.A. §9101 *et seq*.

> The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner. *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Unlike a request for extradition, which is a request that the state in which the prisoner is

---

[6]    Article IV of the IAD provides that:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: And provided further, That there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

42 Pa. C.S.A. § 9101, Art. IV(a)-(c).

7

incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release. *Id.* The IAD is remedial legislation intended to curb previous abuses and alleviate problems associated with prisoners' uncertainty resulting from unresolved charges pending in another jurisdiction. *United States v. Scheer,* 729 F.2d 164 (2d Cir. 1984). Accordingly, the stated purpose of the IAD is to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." 42 Pa.C.S. § 9101, Article I.

When a detainer is lodged, the sending jurisdiction must so inform the prisoner; the prisoner may then request that the outstanding charges be expeditiously resolved. 42 Pa.C.S. § 9101, Article III. Upon receipt of this request, the receiving jurisdiction has 180 days to bring the prisoner to trial. *Id.* If the prisoner does not request the expeditious resolution of charges or challenges extradition, the receiving jurisdiction has 120 days to bring him to trial upon gaining custody of the prisoner. 42 Pa.C.S. § 9101, Article IV. The act also provides that the court may grant any necessary or reasonable continuance for good cause shown in open court with the prisoner or his counsel present, and that the statute is tolled "whenever and for as long as the prisoner is unable to stand trial, as determined by the court . . .." 42 Pa.C.S. § 9101, Articles IV and VI.

Commw. v. Montione, 720 A.2d 738, 740 (Pa. 1998).

In this case, the Defendant requested to be transferred from detention in Florida to Pennsylvania to face the charges at issue, and thus, it is clear that this case arises under Article III of the IAD relating to defense requests for transfer. However, Defendant appears to assert the applicability of Article IV of the IAD relating to prosecution requests for transfer, because the Commonwealth had a duty of due diligence in the timely prosecution of the crimes charged. In his brief, Defendant asserts that "[t]he Commonwealth's failure to bring the Defendant to the Commonwealth of Pennsylvania immediately after the disposition of the Florida matter on December 4, 2012, is a lack of due diligence on its part," requiring the dismissal of the charges and the release of the Defendant. Brief in Support of Post-Sentence Motions Filed on September 7, 2016 at 12.

8

The Interstate Agreement on Detainers is consistent with Rule 1100 of the Pennsylvania Rules of Criminal Procedure in its concern with bringing offenders to a speedy trial. While the Interstate Agreement on Detainers requires that a prisoner detained in another state's jurisdiction be brought to trial within one hundred, eighty days of the Commonwealth's receipt of the prisoner's request for final disposition, Rule 1100 (not specifically addressing extradition) requires trial to commence within one hundred, eighty days of the date on which the complaint is filed.

Both statutes, however, have identified one hundred, eighty days as an appropriate limit for a "speedy trial" and both have provisions for exceptions to the linear running of the one hundred, eighty days. Article (VI)(a) of the Interstate Agreement on Detainers states:

(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is *unable to stand trial,* as determined by the court having jurisdiction of the matter. 42 Pa.C.S.A. § 9101(VI)(a).

. . .

[The courts have] been consistent, whether under the Interstate Agreement on Detainers or Rule 1100 cases, in acknowledging that "the period of time between an accused's waiver of extradition and his subsequent return to Pennsylvania may be held ultimately excludable if the Commonwealth demonstrates due diligence in effectuating that return," *Commonwealth v. Martin,* 306 Pa. Super. 108, 115, 452 A.2d 238, 241 (1982), and in designating this period of time as a period of "unavailability of the defendant" as specified in Pa.R.Crim.P. 1100(c)(3)(i), and a period when defendant is "unable to stand trial." 42 Pa.C.S.A. § 9101(VI)(a). Due diligence is a fluid concept which must be determined on a case by case basis.

Commw. v. Woods, 663 A.2d 803, 807 (Pa. Super. 1995).

In response to an alleged speedy trial violation, the Commonwealth must demonstrate "due diligence by a preponderance of the evidence . . . to avail itself of an exclusion." Commw. v. Selenski, 994 A.2d 1083, 1089 (Pa. 2010). However, it must be noted that "[d]ue diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." Commw. v. Booze, 947 A.2d 1287, 1290 (Pa. Super. 2008).

The charges in this case were initially filed against the Defendant on or about June 11, 2012. The Defendant then immediately fled the jurisdiction. By his own testimony, he found out

9

about the charges and the warrant for his arrest during a traffic stop in Georgia. Subsequently, he was arrested and detained on charges in Florida. Those charges were disposed of on December 4, 2012.

With respect to the question of the Commonwealth's due diligence in this case, the record establishes that once the charges were filed and it was determined that the Defendant had absconded, the City of Bethlehem Police Department followed up on all available leads in an effort to ascertain his whereabouts. Specifically, Officer Haubert made contact with Defendant's sister and roommate, Lori Worthington, his brother Timothy Worthington, Joe Lombardo – his boss at Penn Pizza, and a counselor's office, asking them to contact him with any new information. N.T. 8/6/13, 53-56.

On August 29, 2012, the Pennsylvania State Police – Megan's Law Unit learned that the Defendant had been arrested and charged with similar crimes in Florida. Commonwealth Exhibit 1. Then, on or about November 14, 2012, the Commonwealth was made aware that Defendant has been incarcerated in Florida on a second set of charges, and that such charges were due to be disposed of on December 17, 2012. Id. Defendant disposed of his charges on December 4, 2012 in advance of his trial date. Thereafter, Defendant filed for transfer to Pennsylvania to face his charges. Pennsylvania received notice of his request under Article III of the IAD on February 4, 2013, and the Defendant arrived in Pennsylvania on or about March 13, 2013.

Immediately after ascertaining that the Defendant had absconded, the Commonwealth followed every available lead, to no avail. It then learned that the Defendant had been detained and was facing charges in Florida, and was advised that the Defendant would be going to trial on or about December 17, 2012. In fact, the charges were disposed of on December 4, 2012, and there is no evidence of notice to the Commonwealth in this regard. Then, on February 4, 2013, just sixty-

10

two (62) days after the disposition of the charges, and forty-nine (49) days after the trial date, the Commonwealth received the Defendant's transfer request under Article III of the IAD. The Defendant arrived in the Commonwealth thirty-seven (37) days later, on or about March 13, 2013. While the sixty-two (62) days between the disposition of Defendant's Florida charges and the time that his extradition was set into motion with the receipt of his request under Article III of the IAD on February 4, 2013, may not be excludable time, the Court is satisfied that the Commonwealth demonstrated a reasonable effort to secure the Defendant's presence in the Commonwealth and bring him to trial on the instant charges, and that the Defendant was timely brought to trial even when the aforementioned sixty-two (62) day period is charged against the Commonwealth.

Thus, on these facts, the Court finds that the Commonwealth, by and through the affiant, the City of Bethlehem Police Department, and the Pennsylvania State Police, was duly diligent in attempting to locate the Defendant and bring him to Pennsylvania to face his charges. Consequently, the Court rejects Defendant's assertion of the denial of his speedy trial rights under Article IV of the IAD, and that portion of his motion is **DENIED.**

Having established the Commonwealth's due diligence, the Court moves to consideration of Defendant's assertion of the violation of his speedy trial rights under Article III of the IAD. As set forth *supra*, the Commonwealth received notice of Defendant's request for transfer under the IAD on February 4, 2013, which was the triggering event for the 180-day timeframe under Article III. Commw. v. Williams, 896 A.2d 523, 560, n.9 (Pa. 2006).[7]

Article III provides that:

---

[7]     While Defendant urges that the 180-day timeframe provided for under Article III of the IAD should have begun as of the disposition of Defendant's Florida charges on December 4, 2012, or the waiver of his extradition hearing on January 22, 2013, the law is clear that the triggering event under Article III is the arrival of the defendant's Article III request in the receiving state.

11

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . .

. . .

42 Pa. C.S.A. § 9101, Art. III(a).

At Article VI(a), the IAD further provides that "[i]n determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." 42 Pa. C.S.A. § 9101, Art. VI(a).

As per the record established at the hearing of this matter, this case arises under Article III of the IAD, because the Defendant made a written request for transfer to Pennsylvania. Defendant's Exhibit 2. The Commonwealth received that request on February 4, 2013. Id. Thereafter, the Commonwealth had one-hundred eighty (180) days to bring the Defendant to trial. The one-hundred eightieth day fell on Sunday, August 4, 2013, and trial commenced on Tuesday, August 6, 2013, one-hundred eighty-three (183) days later.

However, as the record shows, the Defendant filed a *pro se* Habeas Corpus Motion and Motion for Removal of Counsel on June 3, 2013, which he never praeciped to a hearing list, and he filed a Motion to Dismiss on July 10, 2013. A hearing on that motion was held on July 19, 2013, and dismissed on July 23, 2013. Then, on August 2, 2013, Defendant filed a Writ for Habeas Corpus, which was denied on August 5, 2013. The disposition of these motions necessarily caused delay in bringing the matter to trial for a period of fifty-three (53) days, from June 3 to July 23, 2013, and from August 2 to August 5, 2013. Excluding these fifty-three (53) days from the 180-

12

day timeframe, Defendant was brought to trial one hundred twenty-seven (127) days after receipt of his request for transfer under Article III of the IAD. In bringing these motions, the Defendant rendered himself unable to stand trial until their disposition, necessarily tolling the 180-day timeframe prescribed by Article III. As such, Defendant's motion asserting the denial of his speedy trial rights under Article III of the IAD is **DENIED.**

Finally, Defendant asserts the denial of his speedy trial rights under Pa.R.Crim.P. 600. The Court having already determined the Commonwealth's due diligence in its efforts to bring the Defendant to trial on his charges, the sole issue is the calculation of time under Rule 600. By his motion, Defendant asserts the Commonwealth's failure to bring the Defendant to trial within one hundred eighty (180) of his incarceration. Specifically, the Defendant contends that the one hundred eighty (180) day period began to run as of the disposition of his Florida charges on December 4, 2012, and that it expired well before his trial on August 6, 2013.

In ruling on this motion, the Court is mindful that:

> [T]he administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth . . . So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

Commw. v. Jones, 886 A.2d 689, 699 (Pa. Super. 2005).

In assessing the Commonwealth's compliance in this case under Rule 600, the Court has already determined the Commonwealth's exercise of due diligence from the time the charges were filed through December 4, 2013. It has likewise determined the Court's due diligence for the period from February 4, 2013 through March 13, 2013. Additionally, the Court has already determined

13

that there were fifty-three (53) days of excludable time attributable to motions filed by Defendant.[8]

Thus, even if the Court were to agree with the Defendant that the one hundred eighty (180) day period did in fact commence on December 4, 2012, taking into account the aforementioned excludable time, trial still occurred within one hundred fifty-five (155) days of that date. Accordingly, Defendant's motion alleging the violation of his speedy trial rights under Pa.R.Crim.P. 600 is **DENIED**.[9]

**BY THE COURT:**

CRAIG A. DALLY,        J.

---

[8]      While the Defendant asserted at the hearing of this matter that the filing of these motions did not toll the time for trial under the IAD and Rule 600, in part based on a representation made on the record by another judge of this Court and in part because the motions arose under the IAD, the case law makes it clear that the time from the filing of any defense motion in the period before trial, whether a motion to dismiss for violation of speedy trial rights, or other pretrial motion, to the disposition of such motion is excludable time. Commw. v. Williams, 726 A.2d 389 (Pa. Super. 1999) appeal denied 560 Pa. 745, 747 A.2d 368 (Pa. 1999); Commw. v. Sisneros, 692 A.2d 1105 (Pa. Super. 1997); Commw. v. Chilcote, 578 A.2d 429 (Pa. Super. 1990).

[9]      Finally, although the Defendant appears to concede that he has no recourse related to the fact that the 2012 charges were dismissed for the affiant's failure to appear at the preliminary hearing on April 2, 2013, and were then refiled nine days later, on April 11, 2013, the Court notes that at the hearing in this matter, he appeared to be asserting his illegal detention under the IAD from the time the charges were dismissed. However, Pa.R.Crim.P. 544 expressly provides for the refiling of charges under such circumstances, and Article V of the IAD, provides that any period of temporary custody arising thereunder shall be for the disposition of the charges giving rise to the transfer, or for *"prosecution on any other charge or charges arising out of the same transaction."* 42 Pa.C.S.A. §9101, Art. V(d). Accordingly, the fact that the charges were dismissed and them refiled is of no consequence to the disposition of Defendant's motions.

14